[Crim. No. 4273. Second Dist., Div. One. Mar. 22, 1949.]

THE PEOPLE, Respondent, v. EDWARD WILL HAGEMANN, Appellant.

Buck & O'Reilly for Appellant.

Fred N. Howser, Attorney General, and James A. Doherty, Deputy Attorney General, for Respondent.

DORAN, Acting P. J.—This is an appeal from the judgment and order denying a new trial.

Defendant was charged by information with murder and was found guilty by a jury of manslaughter. The victim was defendant's wife. As recited in appellant's brief, ''Recurrent quarrels and separations between them culminated on the night of February 22, 1948, or early morning of February 23, 1948, when the defendant fatally shot his wife and seriously wounded himself at their home near Oceano, California. No third persons were present at the time of the shooting, and the affair was not discovered until some ten hours later.

''At the trial the defendant admitted the shooting, but contended that he acted in self-defense. He testified that he and his wife had been drinking quite heavily the evening of the tragedy, although he less than his wife, and the deceased in particular was considerably intoxicated and belligerent. His accounting of the immediate circumstances leading up to the fatal event was that during the continuation of an argument between them at their home as to whether they should resume normal married relationship, the deceased procured a revolver from another room, whereupon the defendant ran out the front door.'' Defendant returned about 30 minutes later; ''. . . at this point the defendant testified, his wife started to rise up out of the chair, at the same time pulling a gun from her purse and saying to him, 'I'll kill you this time for sure, you son-of-a-bitch', whereupon he lunged for her, grappled for the gun, and obtained it and fired five shots in rapid succession into the woman's body. Approximately 10 or 15 minutes later, as near as the defendant could recall, he shot himself twice in an apparent attempt to take his own life.''

According to Officer Hardman, who was first to visit the scene, ''I asked him what happened and he said—well, he says, 'I lost my head, I guess, and shot my wife and shot myself.'

''Q. And what did you reply, if anything? A. I just said, 'Ed, what did you do that for?' Well, he says, 'We was drinking and I lost my head.' ''

In a statement made by defendant to the district attorney the day following the shooting, defendant answered in reply to the following questions as follows:

"Q. Had you and she both been drinking? A. Yes.

"Q. How much? A. We had about four drinks.

"Q. What led to the actual using of the gun? A. More or less the liquor. I wasn't exactly afraid of her, but my wife, she was a pretty husky woman, and it takes a pretty good man to handle her. I have a scar here where she hit me not long ago.

"Q. Yes, I heard about that. A. Well there's nothing much to it.

"Q. Did you have the gun with you or in the house? A. In the house.

"Q. One that you've had right along? A. For four years.

"Q. What kind of a gun is it? A. Smith and Wesson.

"Q. At what time did you shoot her? A. At 1:00 o'clock in the morning.

"Q. Just you and she there? A. Yes.

"Q. Had she said anything to you? A. No, she said that she was going to make a decision. 'I'll be up at San Luis so pick me up.'

"Q. There wasn't much argument to it then—she must have told you that she wasn't going to come back? A. She said, 'I'm not going to make a decision yet.'

"Q. Did you have the gun in your pocket? A. No, it was in the kitchen. I went after it.

"Q. Was she looking at you? A. Yes, she just said it was the best way out.

"Q. How many drinks did you have? A. About four drinks.

"Q. What were you drinking? A. Bellows Whiskey, straight, and I made hers into a Highball with some ice.

"Q. What did the doctor say about your condition? A. 50-50 chance. They operated last night and took both bullets out of me.

"Q. How long after you shot her that you shot yourself? A. Ten minutes apart.

"Q. You shot five at her and then re-loaded? A. Yes, I'm sure I did."

At the trial, defendant testified:

"Q. After you took the gun away from Mrs. Hagemann, why did you shoot her? A. I don't know.

"Q. I'm sorry, I didn't hear your answer. A. I said I didn't know.

"Q. Were you fearful at that time that she would do bodily injury to you? A. Not maybe at that time. I didn't give it a thought.

"Q. You merely took the gun away from her and shot her, is that correct. A. That's correct.

"Q. And you shot her how many times? A. Five times."

It is contended on appeal (1) that the court erred in failing and refusing to instruct the jury on the issue of self-defense; (2) that "The trial court erred in excluding evidence of prior uncommunicated threats by the deceased against the defendant and of the general reputation of the deceased for quarrelsomeness, turbulence and violence."; and (3) that "The trial court erred in admitting in evidence the contents of a file pertaining to an action for divorce against the defendant."

█ Appellant argues that "The chief question on this appeal is simply whether there was any evidence before the jury which fairly raised the issue of self-defense. If there was such evidence, the failure of the trial court to give requested instructions on the law of self-defense amounted to prejudicial error."

At the time the issue of self-defense was argued at the trial the trial court commented as follows:

"There must be, however, in every case at least some evidence tending to support Defendant's belief in that danger, and the Defendant himself must actually and honestly entertain such a belief, before self-defense becomes an issue and before such evidence is admissible.

"But that is not the factual situation in this case. It is apparent from the Defendant's own testimony in this case that he did not honestly belie*f*e himself in danger after he took the gun away from his wife. His exact words were, on cross-examination, as follows, and I quote:

" 'Q. And after you took the gun away from Mrs. Hagemann, why did you shoot her? A. I don't know.

" 'Q. I'm sorry; I didn't hear your answer. A. I said, I didn't know.

" 'Q. You were fearful at that time that she would do bodily injury to you. A. Not maybe at that time; I didn't give it a thought.

" 'Q. You merely took the gun away from her and shot her, is that correct? A. That is correct.'

"The defendant's testimony is clear and unequivocal. There can be no doubt about the matter, and it leaves nothing for

the jury to decide in this case on the issue of self-defense. In fact, self-defense ceases to be an issue in the case at all. Therefore, evidence of deceased's bad character and bad reputation for peace and quiet, and evidence of uncommunicated threats will not be admitted.''

That the trial court was correct both as a matter of fact and as a matter of law there can be no question. ''It is error to give an instruction which, although correctly stating a principle of law, has no application to the facts of the case. . . . To charge the jurors as to an issue not predicated upon some theory logically deducible from the evidence presents for consideration a question not properly determinable by them.'' (*People* v. *Eggers,* 30 Cal.2d 676, 687 [185 P.2d 1].) And in *People* v. *Chapman,* 76 Cal.App.2d 651, 659 [173 P.2d 860], appears the following, ''. . . An examination of . . . cases [cited by the defendant] . . . leads to the conclusion that while it may be error to refuse or to fail to give such an instruction where the facts of the particular case reveal a theory or a factual situation wherein the right to pursue and slay is actually involved, no such situation exists in the present instance . . .

''There was no evidence produced herein which would require an instruction on the right of pursuit, and although the trial court would not have gone astray in giving such an instruction, it was not legally required to do so, and no prejudicial error resulted from its refusal to so instruct the jury.'' See, also, *People* v. *Coston,* 82 Cal.App.2d 23, 42 [185 P.2d 632]; *People* v. *Kellogg,* 6 Cal.2d 448 [57 P.2d 1305]; *People* v. *Connell,* 195 Cal. 584 [234 P. 374]; *People* v. *Donnelly,* 190 Cal. 57 [210 P. 523]; *People* v. *Mohammet,* 189 Cal. 429 [208 P. 963].

Appellant concedes that ''If the issue of self-defense is resolved against the defendant as a matter of law, then it is true that no errors in the admission or exclusion of evidence can now be said to have harmed the defendant, since he admitted the shooting and was convicted of manslaughter.'' This disposes of appellant's contentions 2 and 3 above mentioned.

There being no errors in the record, the judgment and order are affirmed.

White, J., concurred.